UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CONSTANCE ANDERSON; STEPHEN D.
PIGG,

        *Plaintiffs-Appellants,*

        v.

DAVID L. WEINSWEIG, M.D.; TRI-
STATE NEUROSCIENCE CENTER,
INCORPORATED,

        *Defendants-Appellees,*

        and

CABELL HUNTINGTON HOSPITAL,
INCORPORATED; STEPHEN L. WILSON,
M.D.; HUNTINGTON SURGICAL
ASSOCIATES, INCORPORATED; VENKATA
RAMAN, M.D.; MARCIA BOYD, a/k/a
Marcia Doe, R.N.,

        *Defendants.*

No. 01-1918

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(CA-99-166-3)

Argued: April 3, 2002

Decided: May 14, 2002

Before WILKINS and MICHAEL, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Henry Metz, Cincinnati, Ohio, for Appellants. Fred B. Westfall, Jr., FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C., Charleston, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Constance Anderson appeals a judgment in favor of Dr. David L. Weinsweig in her medical malpractice suit.* She contends that the district court erred in allowing Weinsweig to impeach her expert witness, Dr. Donald Austin, with findings by the American Association of Neurological Surgeons (AANS) concerning alleged defects in Austin's expert testimony in another case. We affirm.

### I.

In 1997, Anderson checked into a hospital for treatment of severe headaches. After two weeks of testing and observation, a medical team headed by Weinsweig determined that Anderson needed brain surgery. On March 3, 1997, Weinsweig arranged to perform this surgery on March 5.

On March 4, Anderson began experiencing problems with her right foot. The problems persisted overnight; when Anderson arrived at the operating room the next morning, her foot was swollen and no pulse

---

*Several other parties were involved in this litigation in the district court, and two of them are also parties to this appeal. For convenience, we will refer to the Appellants as "Anderson" and the Appellees as "Weinsweig."

could be detected. Although Weinsweig was aware of these problems, and although treatment of peripheral vasculature is outside his area of expertise, he did not request advice from a vascular specialist. Instead, he determined for himself that the problems arose from constricted blood flow; that this constriction could not be treated without administering blood thinners; that these blood thinners, combined with inevitable delays in performing the brain surgery, might exacerbate the problems in Anderson's brain; and that it was therefore appropriate to proceed with the brain surgery even though doing so might have adverse consequences for Anderson's foot. Accordingly, Weinsweig performed the brain surgery as scheduled.

The surgery was successful in treating Anderson's headaches. It was not possible to attend to Anderson's foot for a few days after the operation, however. As a result of this delay in treatment, two of Anderson's toes were amputated.

Anderson sued Weinsweig for malpractice, alleging that he should have consulted a specialist for her foot before operating on her brain. She supported this claim at trial with expert testimony from Dr. Austin. On cross-examination, Weinsweig's counsel questioned Austin about a six-month suspension Austin received from the AANS. This questioning included references to specific findings regarding Austin's testimony in another malpractice case, including findings that Austin had violated AANS ethical standards by not preparing adequately before testifying. Anderson objected to questions incorporating AANS findings, but these objections were overruled. Austin then admitted that the AANS had made such findings but asserted that they were false and that the real motivation for the AANS sanction was to punish him for testifying against another neurosurgeon.

The jury returned a verdict in favor of Weinsweig. After the district court denied Anderson's post-trial motions, Anderson initiated this appeal.

## II.

Anderson's primary claim is that the district court erred in permitting Weinsweig to introduce evidence of the AANS findings against Austin. We hold that there was no error warranting reversal.

Anderson initially asserts that it violates public policy to allow professional organizations to discipline members who provide expert testimony against other members. According to Anderson, such disciplinary actions deter professionals from testifying against their colleagues. We decline to consider this argument; if the problem described by Anderson exists, it should be solved legislatively, not judicially.

The question that remains is whether evidence of findings by the AANS was properly admitted under the Federal Rules of Evidence. We need not resolve this question because we hold that, even if the evidence was inadmissible, the error was harmless.

In a civil case, an error will be deemed harmless if the appellate court can "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error[s]." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999) (en banc) (alteration in original) (internal quotation marks omitted). This standard is met here. It was undisputed at trial that there were risks inherent in either performing the surgery immediately or postponing the surgery to consult a vascular specialist, that Weinsweig was aware of these risks, and that he made the choice that he believed would have the greatest benefits for Anderson. This left very little room for liability; in essence, Anderson was required to show that Weinsweig should have requested a vascular consult even though he already had a basic understanding of the situation and delaying the surgery might have resulted in death or severe brain damage. Introduction of the AANS findings did not significantly impair Anderson's ability to make this showing because Austin effectively "impeached" the findings by accusing the AANS of punishing doctors who assist malpractice plaintiffs. By contrast, far more damage was inflicted through skilled cross-examination of Austin (on issues unrelated to the AANS findings) and through the forceful testimony of Weinsweig and his expert witness. We therefore conclude that the introduction of the AANS findings did not "substantially sway[ ]" the judgment.

## III.

For the foregoing reasons, we hold that the introduction of AANS findings during cross-examination of Dr. Austin was, at worst, harm-

less error. In addition, having reviewed the briefs and the joint appendix and having had the benefit of oral argument, we hold that Anderson's remaining claims do not warrant relief. We therefore affirm the judgment of the district court.

*AFFIRMED*